| |
|---|
| **Perez v 1334 York, LLC** |
| 2024 NY Slip Op 31528(U) |
| April 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 156972/2020 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. PAUL A. GOETZ**      PART      **47**

*Justice*

------------------------------------------------------------------------------X

PERCY PEREZ,

                  Plaintiff,

             - v -

1334 YORK, LLC, STRUCTURE TONE, LLC, SOTHEBY'S INC.

                  Defendant.

------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 156972/2020 |
| MOTION DATE | 06/20/2023, 06/20/2023 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102

were read on this motion to/for         JUDGMENT - SUMMARY      .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 113, 114, 115, 116

were read on this motion to/for         JUDGMENT - SUMMARY      .

In this Labor Law personal injury action defendants move for summary judgment dismissing the complaint (motion sequence number 002) and plaintiff moves for summary judgment on his Labor Law §§ 240 (1) and 241 (6) claims (motion sequence number 003). The motions are consolidated for disposition.

## *BACKGROUND*

Plaintiff, Percy Perez, seeks damages for personal injuries he allegedly sustained on April 13, 2019 when he fell from a "Baker scaffold" (the "scaffold") while working on a construction project (the "Project") at a building located at 1334 York Avenue, New York, NY (the "Premises"). Plaintiff alleges that the scaffold did not have rails and that it moved causing him to fall.

At the time of the accident, the Premises was owned by 1134 York, LLC ("York"). Sotheby's, Inc. ("Sotheby's") leased the portion of the Premises where plaintiff was working at the time of the accident. Structure Tone, LLC ("Structure Tone") was the general contractor on the Project. Plaintiff was an employee of Commodore Construction Corp. ("Commodore"), a subcontractor doing drywall work on the Project.

### *Plaintiff's Deposition Testimony*

Plaintiff appeared for a deposition on August 10, 2022 (NYSCEF Doc. No. 86).[1] At the time of the accident, plaintiff was working for Commodore as a wall taping mechanic (plaintiff's tr. at 34-35, 45). He testified that his foremen on the Project was "Michael," a Commodore employee (*id.* at 44-45). He further testified that he had never heard of York or Sotheby's, nor did he know who owned the Premises (*id.* at 167, 168).

Plaintiff testified that Commodore was the only entity that provided plaintiff with tools and materials for his work on the Project (*id.* at 169). He further testified that he had been trained in the assembly and movement of Baker scaffolds (*id.* at 26), and had also been trained to lock all four wheels of a scaffold before getting on it to work (*id.* at 26-27). Plaintiff further testified that he had been trained to install guardrails onto scaffolds and to use guardrails when working five feet or higher from the ground (*id.* at 27-28). Commodore did not provide Plaintiff with any of this training (*id.* at 63)

Plaintiff testified that Commodore held a single safety meeting about the Project, which he attended (*id.* at 60-61) and that the safety meeting included directions as to scaffolds,

---

[1] Plaintiff also appeared for a deposition on September 15, 2022 (NYSCEF Doc. No. 87), which only addressed damages. All references to the plaintiff's deposition testimony in the instant decision shall refer to the August 10, 2022 deposition.

**156972/2020   PEREZ, PERCY vs. 1334 YORK, LLC**                    **Page 2 of 18**
**Motion No.  002 003**

including making sure that scaffolds are locked before using them (*id.* at 62). The safety meeting also addressed the use of safety rails on scaffolds (*id.* at 62-63).

On the date of the accident, plaintiff was working with a team of approximately six to eight other workers (*id.* at 48-49). Plaintiff was installing drywall in a large office space on the fifth floor of the Premises (*id.* at 65, 67). Plaintiff's foreman had directed him to do this work, which involved applying two coats of compound to the walls (*id.* at 55-67, 74). Plaintiff used Baker scaffolds to perform his work (*id.* at 68).

Plaintiff testified that prior to the accident he had been working on a scaffold for approximately two hours, applying the first coat of compound to the walls (*id.* at 82). The scaffold had already been assembled when he began using it (*id.* at 84). Plaintiff testified that during his work, he moved the scaffold around the room approximately ten times, "unlocking it, moving it, and then locking it again and doing it from part to part" (*id.* at 82). He further testified that he unlocked, moved, and relocked this Baker scaffold by himself. Plaintiff testified that there were three scaffolds in the work areas, but that he only used one of them when applying the first coat to the walls (*id.* at 82). After applying the first coat, plaintiff went to lunch (*id.* at 86).

After lunch, plaintiff used the scaffold to apply the second coat to the upper section of the wall (*id.* at 87). He did not know if the scaffold was the same scaffold, he had used to apply the first coat (*id.* at 87). Plaintiff used the scaffold for approximately two to three hours before the accident, and it was the only scaffold he used while applying the second coat (*id.* at 87-88, 108).

Plaintiff testified that the scaffold had safety railing on its short sides but not on its long sides (*id.* at 106-107). Prior to using the scaffold, he looked around his work area for safety railing that would fit on the scaffold's long sides but did not find any (*id.* at 119). Plaintiff did

not ask anyone if any safety railings were available (*id.* at 120). He testified that he did not know if there were any available safety railing that would have fit the scaffold (*id.* at 119). He further testified that he did not know where the scaffold parts were kept on the Project (*id.* at 131).

Plaintiff testified that he asked his foreman if there were any safety railings available, and his foreman told him that there were none (*id.* at 121-122). Plaintiff further testified that he specifically asked his foreman for safety railings because the scaffold did not have them (*id.* at 124). Plaintiff testified that he worked on the scaffold without safety railings (on the long sides) because his foreman "commanded us to work, and we are only workers. We have to obey" (*id.* at 124). Plaintiff further testified that his foreman was the only person he could ask for safety railings (*id.* at 131-132). Plaintiff did not discuss the lack of safety railings with any other workers (*id.* at 122).

Plaintiff testified that he did not have any issues with the scaffold for the two to three hours prior to the accident (*id.* at 108). He further testified that he had moved the Scaffold at least eight to ten times while applying the second coat (*id.* at 88). Each time he moved the scaffold, he would unlock the scaffold's wheels, move the scaffold, relock the wheels, and get back on the Scaffold (*id.* at 88-89). Plaintiff further testified that the wheels on the scaffold had never unlocked on their own (*id.* at 89).

At the time of the accident, plaintiff was on the scaffold, applying the second coat to the upper portion of the wall (*id.* at 87-88). He testified that this work could have been done even if safety railings had been placed on the long sides of the scaffold (*id.* at 132). He further testified that he had personally locked the wheels on the scaffold before the accident occurred (*id.* at 109-114).

[* 4]

Immediately before the accident, plaintiff was facing one of the long sides of the scaffold and did not have safety rails in front or behind him (*id.* at 106-107). The scaffold's platform was approximately four and a half feet above the ground (*id.* at 127). Plaintiff testified that the wheels on one of the short sides of the scaffold became unlocked and the scaffold moved away from the wall, causing him to fall (*id.* at 92-93, 142-143). Plaintiff testified that as he fell from the scaffold, he saw that the wheels had unlocked (*id.* at 143-144). He did not examine the scaffold's wheels after the accident (*id.* at 145).

### *Deposition Testimony of Owen Santangelo, assistant superintendent for Structure Tone*

Owen Santangelo appeared for deposition on November 4, 2022 (NYSCEF Doc. No. 88). At the time of the accident, he was Structure Tone's assistant superintendent for the Project (Santangelo tr. at 14). Structure Tone was the Project's general contractor (*id.* at 20). The Project was an interior fit out of the first through fourth floors of the Premises (*id.* at 22, 60).

Santangelo testified that apart from conducting orientations, Structure Tone had no role in insuring safety on the worksite (*id.* at 14). He further testified that he would orient the subcontractors to the worksite, but that they were responsible for their own safety (*id.* at 14-15). Subcontractors had "competent persons" to ensure the safety of their workers and their site conditions (*id.* at 14-15). Structure Tone did not provide any safety equipment to the Project, and the subcontractors kept track of their own equipment (*id.* at 24-25,31). If Structure Tone saw a subcontractor's workers being unsafe, they would inform the subcontractor's foreman and instruct the subcontractor to correct the issue (*id.* at 18). The subcontractors' foremen were responsible for the day-to-day safety of their employees (*id.* at 18). Santangelo testified that Structure Tone was the only entity with control over the construction work being done on the

**156972/2020   PEREZ, PERCY vs. 1334 YORK, LLC**
**Motion No.  002 003**

**Page 5 of 18**

first four floors of the Premises and that Structure Tone was not required to maintain a safe worksite for all the workers onsite (*id.* at 60).

Santangelo testified that Sotheby's was Structure Tone's client (*id.* at 25). Sotheby's was not involved in the day-to-day work on the Project (*id.* at 27). Santangelo further testified that Sotheby's inspected the premises approximately once a month (*id.* at 27)

Santangelo testified that Commodore was responsible for carpentry on the Project, including framing, drywall, and floor layouts (*id.* at 37). He was unfamiliar with York (*id.* at 25)

Santangelo did not witness the accident and did not know if he was on the worksite on the date of the accident (*id.* at 35, 61).

### *Affidavit of Christopher Sommes, general foreman for Commodore*

Defendants submit an affidavit by Christopher Sommes, dated June 9, 2023 (NYSCEF Doc. No. 92). Sommes states that he was Commodore's general foreman for the Project on the date of the accident (Sommes aff. at para. 6). On the date of the accident, Commodore was performing work on the 5th floor of the Premises that required scaffolds, and Sommes personally inspected the scaffolds that were being used (*id.* at para. 9, 12). Sommes states that he did not find any of the scaffolds used on the Project to be defective (*id.* at 21).

Sommes states that he did not receive any reports that the scaffolds were defective (*id.* at para. 14, 21). He states that all the scaffolds had safety railings and Commodore otherwise had safety railings available on the 5th floor of the Premises (*id.* at 15, 18). He further states that prior to the date of the accident, the workers were made aware that safety rails were available on the 5th floor (*id.* at para.18).

Sommes further states that on the date of the accident, plaintiff never asked him where the safety rails were, nor did he see plaintiff make any effort to obtain safety rails (*id.* at para. 19, 20).

Sommes states that plaintiff was trained to keep the scaffolds' wheels locked while in use and that Commodore prohibits scaffolds from being moved while in use (*id.* at para. 16, 17).

**Affidavit of Kirthley Williams, drywall taper foreman for Commodore**

Defendants submit an affidavit by Kirthley Williams, dated March 20, 2023 (NYSCEF Doc. No. 93). Williams states that on the date of the accident he was a Commodore drywall taper foreman, and plaintiff was a taper working on the 5th floor of the Premises (Williams aff. at para. 6, 7, 8).

Williams states that all the scaffolds had safety railings and Commodore otherwise had safety railings available on the 5th floor of the Premises (*id.* at 14, 18). He further states that prior to the date of the accident, the workers were made aware that safety rails were available on the 5th floor (*id.* at para.18).

Williams further states that plaintiff was trained to keep the scaffolds' wheels locked while in use and that Commodore prohibits scaffolds from being moved while in use (*id.* at para. 15, 16).

**Affidavit of Michael Herron, drywall taper foreman for Commodore**

Defendants submit an affidavit by Michael Herron, dated June 9, 2023 (NYSCEF Doc. No. 94). Herron states that on the date of the accident he was a Commodore drywall taper foreman, and plaintiff was a taper working on the 5th floor of the Premises (Herron aff. at para. 6, 7, 8).

Herron states that all the scaffolds had safety railings and Commodore otherwise had safety railings available on the 5th floor of the Premises (*id.* at 14, 18). He further states that prior to the date of the accident, the workers were made aware that safety rails were available on the 5th floor (*id.* at para.18).

Herron states that plaintiff never asked him where he could find safety rails for the scaffolds, nor did Herron ever deny any such request (*id.* at para. 19, 20). Herron did not see plaintiff make any effort to obtain safety rails (*id.* at para. 20).

Herron further states that plaintiff was trained to keep the scaffolds' wheels locked while in use and that Commodore prohibits scaffolds from being moved while in use (*id.* at para. 15, 16).

### Affidavit of Andreas Villagra Viscarra, taper for Commodore

Defendants submit an affidavit by Villagra Viscarra, dated June 9, 2023 (NYSCEF Doc. No. 95). He states that on the date of the accident he was working with plaintiff as a taper on the 5th floor of the Premises (Viscarra aff. at para. 3, 4, 5).

Viscarra states that he witnessed plaintiff's accident (*id.* at para 7). He further states that the Scaffold's wheels were unlocked prior to the accident, and plaintiff attempted to shift/move the scaffold using his bodyweight (*id.* at para 8). Viscarra states that when plaintiff attempted to move the scaffold in this manner, plaintiff lost his balance and fell to the ground (*id.* at para 9).

He further states that on the date of the accident Commodore had safety railings available on the 5th floor and that the employees were made aware of this (*id.* at 14, 15).

Viscarra states that plaintiff did not equip the scaffold with safety railings prior to the accident (*id.* at para 10). He further states that plaintiff did not ask him where to find safety railings nor did he see plaintiff make any effort to obtain safety railings (*id.* at para 15, 16).

Viscarra states that all Commodore employees are aware that Commodore requires that scaffolds' wheels to be locked while in use, that Commodore prohibits scaffolds from being moved while in use, and that Commodore requires the use of safety rails on scaffolds (*id.* at para 11, 12, 13).

## *DISCUSSION*

It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). "Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action" (*Cabrera v Rodriguez*, 72 AD3d 553, 553-54 [1st Dept 2010]).

"The court's function on a motion for summary judgment is merely to determine if any triable issues exist, not to determine the merits of any such issues or to assess credibility" (*Meridian Mgt. Corp. v Cristi Cleaning Serv. Corp.*, 70 AD3d 508, 510-11 [1st Dept 2010] [internal citations omitted]). The evidence presented in a summary judgment motion must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co. LLC*, 153 AD3d 427, 428 [2017], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]) and bare allegations or conclusory assertions are insufficient to create genuine issues of fact (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). If there is any doubt as to the

existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders*

*v Ceppos*, 46 NY2d 223, 231 [1978]).

### Plaintiff's Labor Law § 240 (1) claim

Plaintiff moves for summary judgment as to liability on his Labor Law § 240 (1) claim.

He argues that he has met his prima facie burden as he fell from a scaffold while doing

construction work and defendants' failure to provide adequate safety rails and/or locking wheels

was the proximate cause of the accident.

Defendants oppose plaintiff's motion and move for summary judgment dismissing the

claim arguing that plaintiff was the sole proximate cause of the accident. They note that plaintiff

had been trained to use safety railings on scaffolds and to lock its wheels after moving it. They

further argue that the scaffold was not defective, and that safety railings were readily available to

the plaintiff in his work area. According to defendants plaintiff was the sole proximate cause of

the accident because he did not make use of the readily available safety railings and attempted to

improperly move the scaffold while he was working on it (and the wheels were unlocked).

Labor Law § 240 (1), also known as the Scaffold Law reads as follows:

Scaffolding and other devices for use of employees

1. All contractors and owners and their agents, except owners of one and
two-family dwellings who contract for but do not direct or control the work, in the
erection, demolition, repairing, altering, painting, cleaning or pointing of a
building or structure shall furnish or erect, or cause to be furnished or erected for
the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers,
blocks, pulleys, braces, irons, ropes, and other devices which shall be so
constructed, placed and operated as to give proper protection to a person so
employed.

Labor Law § 240 (1) "imposes upon owners, contractors and their agents a nondelegable

duty that renders them liable regardless of whether they supervise or control the work" (*Barreto*

*v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]). Liability is imposed when the

**156972/2020   PEREZ, PERCY vs. 1334 YORK, LLC**
**Motion No.  002 003**

"injuries [ ] are proximately caused by the failure to provide appropriate safety devices to workers subject to gravity-related risks" (*Ladd v Thor 680 Madison Ave LLC*, 212 AD3d 107, 111 [1st Dept 2022]).

"The mere fact that a worker falls from a ladder or a scaffolding is not enough, by itself, to establish that the device did not provide sufficient protection. The worker must show that Labor Law § 240 (1) was violated and the violation was a proximate cause of the injury." (*Nazario v 222 Broadway, LLC*, 135 AD3d 506, 508 [1st Dept 2016] citing *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 [NY 2003]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]).

Further, an owner or contractor's breach of Labor Law § 240 (1) is not the proximate cause of an accident "if adequate safety devices are available at the job site, but the worker either does not use or misuses them" (*Robinson v. East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]). "[I]n determining whether there is a violation of Labor Law § 240 (1), or whether a worker is the sole proximate cause of his injuries, the issue to be addressed first is whether adequate safety devices were provided, 'furnished' or 'placed' for the worker's use on the work site." (*Cherry v Time Warner, Inc.*, 66 AD3d 233, 236 [1st Dept 2009]). A safety device need not be in a plaintiff's immediate vicinity in order to be "readily available" to them.

> Liability under section 240 (1) does not attach when the safety devices that plaintiff alleges were absent were readily available at the work site, albeit not in the immediate vicinity of the accident, and plaintiff knew he was expected to use them but for no good reason chose not to do so, causing an accident. In such cases, plaintiff's own negligence is the sole proximate cause of his injury.

(*Gallagher v New York Post*, 14 NY3d 83, 88 [2010]).

The question of whether a plaintiff is the sole proximate cause of their accident for failure to use specific safety equipment depends on whether plaintiff knew where the safety equipment was located and the ease of obtaining the equipment under the given circumstances.

> The burden of providing a safety device is squarely on contractors and owners and their agents… Thus, a worker is expected, as a 'normal and logical response,' to obtain a safety device himself (rather than having one provided to him) only when he knows exactly where a safety device is located, and there is a practice of obtaining the safety device himself because it is easily done.

(*Auriemma v Biltmore Theatre, LLC*, 82 AD3d 1, 10-11 [1st Dept 2011] quoting *Cherry*, 66 AD3d 233, 238 [additional citations omitted]).

To establish that plaintiff was the sole proximate cause of his accident, defendants must show that plaintiff "had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured" (*Kosavick v Tishman Constr. Corp. of N.Y.*, 50 AD3d 287, 288 [1st Dept 2008] quoting *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004] *see also Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp.*, 34 NY3d 1166, 1169 [2020]).

Further, a plaintiff can be found to be the sole proximate of their accident absent a finding of recalcitrance. (*See Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004] ["Even when a worker is not 'recalcitrant'. . . there can be no liability under section 240 (1) when there is no violation and the worker's actions (here, his negligence) are the 'sole proximate cause' of the accident"][internal quotation marks and citations omitted]).

Here, plaintiff has established that his accident falls within the scope of Labor Law § 240 in that he was subjected to a gravity related risk. However, there is conflicting evidence as to whether plaintiff was the sole proximate cause of his accident.

Plaintiff testified that the scaffold did not have railings on the long sides (plaintiff's tr. at 106-107) and that his foreman told him there were none available (*id.* at 121-122). He further testified that while he was working on the scaffold on the side missing railings, the wheels that he himself had locked became unlocked causing him to fall off the scaffold (*id.* at 92-93, 142-143).

Viscarra, plaintiff's coworker, stated that the scaffold's wheels were unlocked, and that the accident occurred when plaintiff attempted to move the scaffold while standing on top of it, using his body to generate momentum (Viscarra aff. at para 8). Vicarra's description of the accident suggests that plaintiff left the scaffold's wheels unlocked and purposefully misused an otherwise adequate scaffold. Further, Sommes, Commodore's general foreman, Williams, a Commodore drywall taper foreman, and Herron, another Commodore drywall taper foreman, all state that plaintiff had been trained to keep the scaffolds' wheels locked while he was using it and not to move a scaffold while working on it (Sommes aff. at para. 16, 17; Williams aff. at para. 15, 16; Herron aff. at para. 15, 16). Sommes, Williams, Herron, and Viscarra, also each state that Commodore workers knew that safety rails were available on the 5th floor (Sommes aff. at para. 15, 16; Williams aff. at para. 14, 18; Herron aff. at para. 14, 18; Viscarra aff. at para. 14, 15). In addition, Sommes and Herron both state that plaintiff never asked about safety railings nor made any effort to obtain them (Sommes aff. at para. 19, 20; Herron aff. at para. 19, 200).

Consequently, issues of fact remain as to whether the wheels of the scaffold were locked or unlocked when plaintiff's accident occurred, whether plaintiff intentionally moved the scaffold while standing on it, whether there were safety rails readily available to him, and whether he "knew he was expected to use them but for no good reason chose not to do so,

[* 13]

causing an accident" (*See Gallagher v New York Post*, 14 NY3d 83, 88 [2010]). Taken together, these contradictions create issues of fact as to whether plaintiff was the sole proximate cause of his accident, both by improperly moving the scaffold and failing to use readily available safety railings.

Accordingly, plaintiff's motion for summary judgment on his Labor Law §240 (1) claim and defendants' motion for summary judgment dismissing the same claim will be denied.

### Plaintiff's Labor Law § 241 (6) claims

Plaintiff moves for summary judgment as to liability on his Labor Law § 241 (6) claim. He argues that defendants violated Industrial Code § 23-5.18 (b), and that the violation was the proximate cause of the accident.

Defendants move for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim arguing that the alleged Industrial Code violations are insufficient to form a basis for Labor Law § 241 (6) claim and/or are inapplicable to the alleged facts.

Since plaintiff does not oppose dismissal of his Labor Law § 241 (6) claims based upon any alleged violations other than Industrial Code § 23-5.18 (b), these claims are dismissed as abandoned (*See Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section."]). Consequently, only defendants' alleged violation of Industrial Code § 23-5.18 (b) remains.

Labor Law §241 (6) provides in relevant part:

Construction, excavation and demolition work

. . .

6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

"Labor Law § 241 (6) imposes a non-delegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Toussaint v Port Auth. of N.Y. & N.J.*, 38 NY3d 89, 93 [2022] [internal quotations marks and citations omitted]).

The non-delegable duty is absolute and "imposes liability upon a general contractor for the negligence of a subcontractor, even in the absence of control or supervision of the worksite" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348-349 [1998], citing Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 502 [1993] [emphasis omitted]). "To establish liability under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision 'mandating compliance with concrete specifications'" (*Ennis v Noble Constr. Group, LLC*, 207 AD3d 703, 704 [2d Dept 2022], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]).

*Industrial Code 23-5.18 (b)*

Industrial Code 23-5.18 (b) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241 (6) (*See Ying Choy Chong v 457 W. 22nd St. Tenants Corp.*, 144 AD3d 591, 592 [1st Dept 2016]) and provides as follows:

Manually-propelled mobile scaffolds

(b) Safety railings required. The platform of every manually-propelled mobile scaffold shall be provided with a safety railing constructed and installed in compliance with this Part (rule).

12 NYCRR 23-5.18.

As previously shown, there are issues of fact as to whether defendants provided plaintiff with adequate safety railings.

Accordingly, plaintiff's motion for summary judgment on his Labor Law § 241 (6) claim based upon an alleged violation of Industrial Code 23-5.18 (b) and defendants' motion for summary judgment dismissing same are denied.

### *Plaintiff's Labor Law § 200 and common law negligence claims*

Defendants move for summary judgment dismissing plaintiff's Labor Law § 200 and common law negligence claims. They argue that they did not control the means and methods of plaintiff's work, nor did they have actual or constructive notice of any unsafe condition as to the scaffold.

Plaintiff does not address defendants' arguments to dismiss his Labor Law § 200 and common law negligence claims.

Labor Law § 200 (1) states, in pertinent part, as follows:

All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005] citing *Comes v N.Y. State Elec. & Gas Corp.,* 82 NY2d 876, 877 [1993]). "[T]here are 'two broad categories' of personal injury claims: 'those

[* 16]

arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed.'" (*Rosa v 47 E. 34th St. (NY), L.P.*, 208 AD3d 1075, 1081 [1st Dept 2022], quoting *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 144 [1st Dept 2012]).

> Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it. Where the injury was caused by the manner and means [means and methods] of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work.

(*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d at 144 [internal citations omitted]; *see also Toussaint v Port Auth. of N.Y. & NY*, 38 NY3d at 94 [to recover under Labor Law § 200 "a plaintiff must show that an owner or general contractor exercised some supervisory control over the operation"]).

Further, "when a worker's injury results from his or her employer's own tools or methods, it makes sense that a defendant property owner be liable only if possessed of authority to supervise or control the work, since such defendant is vested with the authority to remedy any dangers in the methods or manner of the work" (*Chowdhury v Rodriguez*, 57 AD3d 121, 130 [2d Dept 2007]).

Here, plaintiff's accident may have arisen from either the means and methods of his work (i.e. plaintiff using the scaffold without locking the wheel and/or attaching the additional safety rails) or from a defective tool (i.e. the scaffold's wheels coming unlocked while plaintiff was on it). As such, defendants are only negligent if they actually exercised supervisory control over plaintiff's work at the time of the accident.

Defendants have established prima facie that they did not exercise supervisory control over plaintiff's work at the time of the accident. Plaintiff testified that his foreman, a

Commodore employee, directed his work (Plaintiff's tr. at 55-67, 74). He further testified that he never spoke to any of defendants' employees (Plaintiff's tr. at 168, 169).

There is nothing from the record to suggest that defendants exercised supervisory control over plaintiff's work. Further, plaintiff does not oppose defendants' motion to dismiss his Labor Law § 200 and common law negligence claims.

Accordingly, defendants are entitled to summary judgment dismissing plaintiff's Labor Law § 200 and common law negligence claims.

The parties' remaining arguments have been considered and found unavailing.

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff, Percy Perez's, motion for summary judgment pursuant to CPLR § 3212 as to liability in his favor on his Labor Law §§ 240 (1) & 241 (6) claims (motion sequence number 003) is denied; and it is further

**ORDERED** that defendants' motion for summary judgment pursuant to CPLR § 3212 dismissing the complaint (motion sequence number 002) is granted to the extent that plaintiff's common law negligence claims, Labor Law § 200 claims, and Labor Law § 241 claims based upon violations of the Industrial Code, other than Industrial Code 23-5.18 (b) are dismissed and the motion is otherwise denied.

20240430130305PGOETZ1F8279F89CC824E418CE5B8E1BCF04188

| 4/30/2024 | | PAUL A. GOETZ, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |