Ladd v Thor 680 Madison Ave LLC (2022 NY Slip Op 07031)

Ladd v Thor 680 Madison Ave LLC

2022 NY Slip Op 07031

Decided on December 13, 2022

Appellate Division, First Department

González, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 13, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Barbara R. Kapnick Angela M. Mazzarelli Lizbeth González Julio Rodriguez III

Index No. 161412/13 Appeal No. 16606 Case No. 2021-04666 

[*1]Kenneth Ladd, Plaintiff-Respondent-Appellant,
v
Thor 680 Madison Ave LLC, et al., Defendants-Appellants-Respondent, Millennium Restoration and Contracting Corp, et al., Defendants.

Certain defendants appeal, and plaintiff cross-appeals from the order of the Supreme Court, New York County (Lynn R. Kotler, J.), entered October 6, 2021, which, granted plaintiff's motion for partial summary judgment on his Labor Law § 240(1) claim, denied defendants' cross motion for summary judgment dismissing that claim, and granted defendants' motion for summary judgment dismissing plaintiff's common-law negligence and Labor Law §§ 200 and 241(6) claims.

Shaub, Ahmuty, Citrin, Spratt, LLP, Lake Success (Jonathan P. Shaub, Christopher Simone and Payne T. Tatich of counsel), for appellants-respondents.
Pollack, Pollack, Isaac & DeCicco, LLP, New York (Brian J. Isaac and Scott Epstein of counsel), for respondent-appellant.

González, J. 

This appeal arises from an incident that occurred on November 6, 2013, when plaintiff was injured by an emergency hatch door in the ceiling of an Alimak construction hoist (Alimak or the hoist) that closed onto his head while he was working on a renovation project at 680 Madison Avenue, in Manhattan. Supreme Court granted plaintiff's motion for partial summary judgment on his Labor Law § 240(1) claim and granted defendants' motion for summary judgment dismissing plaintiff's common-law negligence and Labor Law §§ 200 and 241(6) claims. We now affirm. Background
Plaintiff commenced this action in December 2013, alleging violations of Labor Law §§ 200, 240(1), and 241(6), as well as common-law negligence. Plaintiff alleged, among other things, that defendants' failure to provide adequate protection from the falling hatch door caused his injuries.
Plaintiff was employed by the general contractor on the project, nonparty Lend Lease, and was tasked with operating Alimak hoists on the site. The Alimaks were provided and installed by defendant Atlantic Hoisting & Scaffolding, LLC (Atlantic). Defendants Thor 680 Madison Ave LLC, Thor Equities, LLC, 680 Residential Owner, LLC, 680 Special LLC, and Age 680 Madison Avenue LLC were the owners of the premises. Defendant Extell Development Company was the development manager.
At his deposition, plaintiff testified that that he operated the same Alimak every day for 18 months while he was on the site. Prior to his accident, he had never opened the hatch door or used the ladder within the hoist to access the ceiling hatch.
On the morning of his accident, plaintiff was operating the Alimak and had just finished delivering concrete blocks on the 14th floor. The hoist unexpectedly got stuck when it descended past the second floor. Plaintiff waited for an emergency serviceperson to help him. After some time, a "rescue guy" named "Jimmy" (James Dickson) appeared outside the hoist gate. Plaintiff was asked by Dickson to set up the ladder inside so he could enter the hoist through the emergency hatch.
Plaintiff initially set up the ladder facing the wrong way. After resetting it, plaintiff climbed up the ladder and, with his right hand, pushed the emergency hatch door open[*2]. The door eventually came to a rest, although plaintiff did not know what, if anything, supported it. After plaintiff opened the hatch door, Dickson stepped from the second-floor platform onto the hoist's rooftop. Suddenly, the hatch door slammed on plaintiff's head, causing plaintiff to slip down a few rungs of the ladder.
Dickson testified that, on the day of the accident, he was employed by Atlantic as an elevator constructor to service and maintain the construction hoists.
Dickson stated that he did not ask plaintiff to climb the ladder or open the hatch, but rather told plaintiff to set up the ladder, so that Dickson himself could enter the hoist through the emergency hatch. After initially setting up the ladder "backwards," plaintiff let go of the hatch and did not realize that it was "coming back at him."
Dickson explained that the hatch door, which had two hinges, could open as far as 90 degrees perpendicular to the hoist's roof; it was prevented by a handrail from opening any further. The hatch door closed by the simple force of gravity. It had no locking mechanism, hydraulic hinges or pistons to slow its descent. Hence, the hatch door would "go straight back down" if a hand was taken off the door.
Plaintiff moved for summary judgment on his claims under Labor Law §§ 200, 240(1), 241(6), and for common-law negligence. Plaintiff proffered the affidavits of three experts. Herbert Heller, plaintiff's licensed engineer and forensic accident investigator, opined that the Alimak hoist is a safety device within the meaning of Labor Law § 240(1). The hatch door's failure to have a mechanism or device to prevent it from dropping, or significantly slow its descent, meant that the hoist was not constructed to provide proper protection. Heller further opined that plaintiff was exposed to a separate and distinct elevation-related risk because he was on a ladder approximately five feet above the hoist floor when he was struck.
William J. Seymour, plaintiff's accident reconstruction and investigation expert, and Patrick Carrajat, plaintiff's elevator/construction hoist expert and field engineer, respectively agreed that the hatch door failed to provide proper protection to plaintiff for the same reasons. Seymour further opined that the hatch itself was a safety device within the meaning of Labor Law § 240(1).
Defendants submitted no expert affidavits in rebuttal.
Supreme Court granted plaintiff's motion on his Labor Law § 240(1) claim, finding that he was exposed to an elevation risk that required sufficient protection. The court held that defendants proximately caused plaintiff's injury by failing to provide plaintiff with a safety device, such as a ladder that extended through the hatch door (thereby propping the door open) or a mechanism to secure the hatch. The court noted that plaintiffs' expert affidavits, stating that the hatch should have been equipped with a ladder of proper length or a mechanism to slow the descent of the hatch [*3]door, were not refuted by defendants.
The court granted defendants' motion for summary judgment dismissing plaintiff's Labor Law § 241(6) claim, finding that the ladder used by plaintiff was not a portable ladder used as a regular means of access between floors, as defined in 12 NYCRR 23-1.21(b)(4). Defendants' motion to dismiss plaintiff's remaining Industrial Code violations was unopposed and accordingly granted.
The court also granted defendants' motion for summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims, finding that the record failed to show that defendants supervised or controlled the manner of his work, or that they had notice of the allegedly dangerous hatch door.
Analysis
In New York, the Labor Law imposes absolute liability on owners and general contractors for injuries that are proximately caused by the failure to provide appropriate safety devices to workers subject to gravity-related risks (see Runner v New York Stock Exch., Inc., 13 NY3d 599, 604 [2009]). "[L]iability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]).
Labor Law § 240(1) provides, in pertinent part: 
"All contractors and owners and their agents ... in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."
Here, plaintiff was operating an Alimak construction hoist, for the purpose of safely moving construction personnel and materials up and down a multistory building. A "hoist" is an enumerated safety device (see Labor Law § 240[1]), and plaintiff's engineering expert averred that the hoist was functioning as a safety device at the time of plaintiff's accident. Defendants submitted no expert affidavit in opposition.
After the hoist got stuck, plaintiff attempted to exit through the emergency hatch in the top of the hoist to reach Dickson. Plaintiff's experts opined that the 30-pound metal hatch door was defectively designed, in that it could not be opened past 90 degrees (perpendicular to the top of the hoist) and had no latching or securing mechanism or hydraulic hinges to prevent it from suddenly falling or to slow its closure. Plaintiff's experts opined that other mechanisms, such as an access ladder tall enough to extend above the hatch and prevent the door from closing, might have prevented an accidental closure.
Plaintiff was injured when the hatch door slammed onto his head as he stood on a ladder with his head protruding above the hatch aperture. We note that, in isolation, a hatch [*4]door is not necessarily a safety device (see e.g. O'Donoghue v New York City School Constr. Auth., 1 AD3d 333 [2d Dept 2003]). Here, however, the hatch door was an essential component of a safety device — the hoist — being employed by plaintiff in an elevation-related capacity. It was foreseeable that the hoist could get stuck; indeed, a purpose of the hatch door was to serve as an emergency egress in such instances. When he was injured, plaintiff was still engaged in an elevation-related activity and attempting to safely remove himself from a height. Under these circumstances, the safety device — the hoist — was inadequate for its purpose of keeping plaintiff safe while engaged in an elevation-related activity. Plaintiff is thus entitled to partial summary judgment on the issue of liability on his claim under Labor Law § 240(1) (see Narducci, 96 NY2d at 267).
The case of Pipia v Turner Constr. Co. (114 AD3d 424 [1st Dept 2014], lv dismissed 24 NY3d 1216 [2015]) is illustrative. In Pipia, the plaintiff was working on a wooden float stage, a floating platform used instead of a scaffold (see Dooley v Peerless Importers, Inc., 42 AD3d 199, 204 [2d Dept 2007]) to repair the underside of a pier. The plaintiff was injured when waves generated by a passing boat made the float stage rock up and down, causing the plaintiff to lose his balance and fall onto the floating platform, on the same level where he was working above the water. In an unrebutted affidavit, the plaintiff's expert opined that Pipia's fall was caused by the absence of safety precautions, which could have included a temporary barrier to shield the float stage from the impact of passing waves. Under these circumstances, we held that the plaintiff was entitled to summary judgment on his Labor Law § 240(1) claim against the project owner and the general contractor (see Pipia, 114 AD3d at 426-427).[FN1]
The alleged circumstances of plaintiff's injury echo the scenario in Pipia, where the safety device — a float stage — could not protect the plaintiff from the foreseeable circumstance of wave action. Here, plaintiff was injured while using an elevation-related safety device — a hoist — which could not be safely used in the foreseeable circumstance of an emergency exit. Accordingly, we find that plaintiff here is entitled to summary judgment on his Labor Law § 240(1) claim against defendant owners, the development manager, and the hoist installer.
The cases relied upon by defendants are distinguishable. Unlike the hoist hatch door in issue, neither the gang box lid in Ormsbee v Time Warner Realty Inc. (203 AD3d 630 [1st Dept 2022]) nor the underground vault hatchway cover in O'Donoghue v New York City School Constr. Auth. (1 AD3d at 335) were components of an inadequate safety device.
Defendants' effort to characterize the hatch door as the relevant safety device is misplaced. "It is not dispositive that the escape hatch covering was not intended to serve as a safety device protecting workers from [*5]elevation-related risks. Rather, since plaintiff's work exposed him to such risks, he was required to be provided with adequate safety devices in compliance with Labor Law § 240(1)" (Giancola v Yale Club of N.Y. City, 161 AD3d 695, 696 [1st Dept 2018]). Section 240(1) thus required defendants to provide plaintiff with a hoist that was adequate to protect him from elevation-related hazards, such as the inherent risk of a stoppage while moving people and materials to and from the floors of the subject building.
Defendants' focus on the hatch door is misplaced for an additional reason. Assuming, in the alternative, that the hatch door itself (as opposed to the hoist of which it is a part) is the relevant mechanism, defendants are subject to Labor Law § 240(1) liability for failing to protect plaintiff from the elevation-related risk presented by a falling object. The 30-pound hatch door opened precariously to an unsecured 90-degree angle and was subject to a sudden drop triggered by the natural force of gravity. Under these circumstances, the "elevation differential here involved" (perhaps two feet) "cannot be viewed as de minimis, particularly given the weight of the object and the amount of force it was capable of generating, even over the course of a relatively short descent" (Runner v New York Stock Exch., Inc., 13 NY3d at 605 [800-pound reel of wire which rolled down stairs]; see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d 1, 10 [2011] [10-foot-tall unsecured pipes standing on end which toppled over and stuck the plaintiff on head]; Brown v Dynamic Installation Corp., 65 Misc 3d 1225 [A], 2019 NY Slip Op 51850[U], * 2, 6 [Sup Ct, NY County 2019] [cables supporting hoist door failed, causing door to fall on the plaintiff]).
Defendants contend that plaintiff's remedy lies in a design defect products liability claim, but this defense was first raised at oral argument and is unavailing (see e.g. Frank v Sobel, 38 AD3d 229, 230 [1st Dept 2007] [the plaintiff "entitled to pursue both contract and quasi contract claims"]).
Plaintiff's purported negligence as to the manner in which he ascended the ladder, or released his hold of the hatch door, would at most constitute contributory negligence, which also poses no defense to a Section 240(1) claim (see Fletcher v Brookfield Props., 145 AD3d 434 [1st Dept 2016]; Nacewicz v Roman Catholic Church of the Holy Cross, 105 AD3d 402, 403 [1st Dept 2013]).[FN2] In this regard, and for purposes of plaintiff's motion for partial summary judgment, the differences between plaintiff's and Dickson's recollections of the accident — where plaintiff recalled that the hatch door fell when Dickson stepped onto the hoist and Dickson recalled that the hatch door fell when plaintiff let go of it — are immaterial.
Having granted plaintiff partial summary judgment on his claim under Labor Law § 240(1), we need not address his claims under Labor Law §§ 241(6) and 200 and common-law negligence (see Gonzalez v 1225 Ogden Deli [*6]Grocery Corp., 158 AD3d 582, 584 [1st Dept 2018]; Bundo v 10-12 Cooper Sq., Inc., 140 AD3d 535, 536 [1st Dept 2016]).
Accordingly, the order of the Supreme Court, New York County (Lynn R. Kotler, J.), entered October 6, 2021, which, granted plaintiff's motion for partial summary judgment on his Labor Law § 240(1) claim, denied defendants' cross motion for summary judgment dismissing that claim, and granted defendants' motion for summary judgment dismissing plaintiff's common-law negligence and Labor Law §§ 200 and 241(6) claims, should be affirmed, without costs.
Opinion by González, J. All concur.
Order, Supreme Court, New York County (Lynn R. Kotler, J.), entered October 6, 2021, affirmed, without costs.
Acosta, P.J., Kapnick, Mazzarelli, González, Rodriguez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 13, 2022

Footnotes

Footnote 1: Some of these details are drawn from the Pipia record, which we judicially notice.

Footnote 2: Defendants' argument that plaintiff was the sole proximate cause of his injuries, raised for the first time on appeal, is unpreserved, as it would require a review of facts which were never presented to the motion court (see Watson v City of New York, 157 AD3d 510 [1st Dept 2018]).