**Geloso v Port Auth. of N.Y. & N.J.**

2025 NY Slip Op 30560(U)

February 19, 2025

Supreme Court, New York County

Docket Number: Index No. 160166/2020

Judge: Richard Tsai

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **HON. RICHARD TSAI**

*Justice*

-----------------------------------------------------------------------------------X

MARIO GELOSO and DAWN GELOSO,

Plaintiffs,

- v -

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, EMPIRE STATE DEVELOPMENT CORPORATION, A/K/A EMPIRE STATE DEVELOPMENT, MOYNIHAN STATION DEVELOPMENT CORPORATION, LONG ISLAND RAILROAD D/B/A MTA LIRR, THE CITY OF NEW YORK, THE NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER CORPORATION, D/B/A AMTRAK and MOYNIHAN TRAIN HALL DEVELOPER LLC,

Defendants.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| PART | 21 |
| INDEX NO. | 160166/2020 |
| MOTION DATE | 07/19/2024 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 42, 55, 68-90, 92-100

were read on this motion to/for                 JUDGMENT - SUMMARY                 .

In this action alleging violations of Labor Law § 240(1), plaintiff Mario Geloso alleges that, on January 30, 2020, while performing construction work at the Moynihan Train Hall Project, a metal tripod weighing between 80 and 150 pounds fell about five to five and a half feet and struck him on the head.

Plaintiff and his wife, plaintiff Dawn Geloso, now move for summary judgment in their favor on the issue of liability against defendants Empire State Development Corporation A/K/A Empire State Development (ESD), Moynihan Station Development Corporation (MSDC), and Moynihan Train Hall Developer LLC (MTHD).[1] Defendants oppose the motion.

---

[1] The action was discontinued as against defendants The Port Authority of New York and New Jersey, Long Island Railroad D/B/A MTA LIRR, The City of New York, The New York City Transit Authority, Metropolitan Transportation Authority, and National Railroad Passenger Corporation D/B/A Amtrak (*see* NYSCEF Doc. No. 69 [Plaintiffs' Affirmation in Support] ¶ 2; NYSCEF Doc. No. 42 [Stipulation of Discontinuance]; NYSCEF Doc. No. 55 [Stipulation of Partial Discontinuance]).

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**
**Motion No.  002**

**Page 1 of 11**

## BACKGROUND

It is undisputed that, on the day of the accident, ESD was the owner of the Moynihan Train Hall Project, located at 421 8th Avenue, New York, New York, adjacent to 33rd Street between 8th and 9th Avenues (*see* NYSCEF Doc. No. 84 [Wynn Deposition Transcript], at 16, lines 4-7]). MSDC, a subsidiary of ESD, served as the "eyes and ears" of ESD at the construction project (Wynn Dep. Tr. at 28, lines 3-8).

It is also undisputed that, pursuant to a Development Agreement, dated June 15, 2017 (NYSCEF Doc. No. 85), ESD hired MTHD as the developer responsible for developing and constructing Moynihan Train Hall. Pursuant to a Design-Build Agreement, dated June 15, 2017, MTHD in turn retained non-party Skanska Moynihan Train Hall Builders as the general contractor to carry out construction services for the project (NYSCEF Doc. No. 86; NYSCEF Doc. No. 87 [Bellman Deposition Transcript], at 17, lines 2-3; at 36, line 14 through 37, line 6). Plaintiff was employed as a laborer by non-party Skanska Construction (Skanska) (*see* NYSCEF Doc. No. 73 [Plaintiff's Verified Bill of Particulars] ¶¶ 32-33).

### *Plaintiff's 50-H Testimony (NYSCEF Doc. No. 76)*

Plaintiff testified at the 50-h hearing that he was employed by Skanska as a hand laborer at the Moynihan Train Hall Project (NYSCEF Doc. No. 76 [Plaintiff's 50-h Hearing Transcript], at 15, lines 19-22; at 16, line 18 through 17, line 10). The accident occurred outside the Moynihan Post Office building on 33rd Street (*id.* at 26, line 25 through 27, line 6). On the day of the accident, plaintiff's supervisor, Chuck, assigned plaintiff to perform patching, or filling holes with cement (*id.* at 29, lines 7-9; at 32, lines 4-7). When plaintiff asked what he needed for the job, his supervisor said that he only needed a harness, because someone had already prepared everything else in place there (*id.* at 32, lines 16-22).

To perform the patching job, plaintiff descended a ladder into a rectangular hole which plaintiff described as 45-50 feet deep, and 8½ feet long  (*id.* at 35, lines 2-24). Positioned outside the hole was a metal tripod, a device used to pull people up from the hole (*id.* at 42, line 23 through 43, line 16; at 45, lines 3-9). Plaintiff was wearing a helmet and a harness with a cable hooked up to the tripod (*id.* at 50, lines 17-23; at 51, lines 16-18; at 57, lines 21-23). Plaintiff did not know who put the tripod there or whether the tripod was attached to anything to prevent the tripod from falling (*id.* at 44, lines 19-22; at 45, lines 10-12). While plaintiff was descending the ladder, at about five feet down into the hole, with his head still outside the hole and the rest of his body inside the hole, the tripod hit his head, neck, and back (*id.* at 47, lines 6-17; at 48, lines 2-6). Plaintiff slid about two feet and then grabbed onto the ladder to prevent himself from falling (*id.* at 48, line 10 through 49, line 9).

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**
**Motion No.  002**

**Page 2 of 11**

[* 2]

### *Plaintiff's Deposition Testimony (NYSCEF Doc. No. 97)*

Plaintiff testified at his deposition that he was employed by Skanska as a laborer at the construction project (NYSCEF Doc. No. 97 [Plaintiff's Deposition Transcript] at 25, line 15 through 26, line 4; at 28, lines 2-5). He testified that on the day of the accident, his supervisor from Skanska named "Chuck" and his foreman named "Vinny Terrezza" gave him his assignment and said that he needed a harness for the task (*id.* at 30, line 25 through 31, line 9; at 57, line 20 through 58, line 3). Plaintiff's task was to close holes with cement inside of a subway ventilation shaft, located outside of the Moynihan Post Office building (*id.* at 35, line 13 through 36, line 4; at 41, line 22 through 42, line 3).

According to plaintiff, he used a ladder to access the ventilation shaft, which was approximately 30 to 40 feet deep (*id.* at 44, lines 14-25; at 45, lines 6-15). A tripod was set over the ventilation shaft to assist plaintiff with getting into and out of the shaft (*id.* at 49, lines 15-21). The metal tripod, which consisted of three legs, stood about seven to seven and a half feet tall and weighed between 80 and 150 pounds (*id.* at 50, lines 2-5; at 69, lines 9-15). Plaintiff was wearing a hard hat and a harness with a metal cable attached to the tripod (*id.* at 51, line 25 through 52, line 9; at 53, line 25 through 54, line 3). He did not know who put the tripod in place or whether the tripod was secured in any way to the ground (*id.* at 50, line 17 through 51, line 3). He did not touch the tripod or check to see if it was secure before descending the shaft (*id.* at 51, lines 4-7). He had used a tripod a few times before the date of the accident, but he did not specialize in securing tripod equipment (*id.* at 51, lines 11-24).

Plaintiff testified that as he was descending the ladder inside the shaft, at about five or six steps down the ladder and with his head still above the shaft, the accident occurred (*id.* at 54, lines 12-16). "I felt the cable locked [*sic*] and I felt a pulling" (*id.* at 68, lines 17-18). Immediately after the cable locked, "[t]he tripod fell on my head. I slipped two or three rungs and I gripped onto the ladder" (*id.* at 68, lines 19-23). When asked what part of the tripod fell onto his head, plaintiff responded, "The end part. The point of it [the tripod] hit my head and ended up on my shoulders as well" (*id.* at 73, lines 8-14). Plaintiff did not fall off the ladder, but gripped onto the ladder, preventing himself from falling (*id.* at 56, line 22 through 57, line 2; at 74, lines 2-5). At the deposition, plaintiff reviewed several photographs and confirmed that they depicted the accident location and a tripod similar to the one he used on the day of the accident (*id.* at at 36, lines 17-24; at 38, line 14 through 39, line 5; at 58, line 22 through 59, line 17; at 63, lines 2-12).[2]

---

[2] The photographs that were marked as Defendants' Exhibits A-F at plaintiff's deposition and that were shown to plaintiff were appended to the end of the transcript of plaintiff's deposition on July 27, 2022 (*see* NYSCEF Doc. Nos. 77 and 97).

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**
**Motion No.  002**

**Page 3 of 11**

[* 3]

### Deposition Testimony of Kelly Davis (Senior Resident Engineer at The Port Authority of New York and New Jersey) (NYSCEF Doc. No. 83)

Kelly Davis testified that ESD hired her employer, The Port Authority of New York and New Jersey, for construction management of engineering services at the Moynihan Train Hall Project (NYSCEF Doc. No. 83 [Davis Deposition Transcript], at 8, lines 10-13; at 13, lines 14-25; at 14, lines 8-10). At the deposition, she reviewed several photographs and confirmed that they depicted the accident location and a tripod (*id.* at 46, line 24 through 47, line 7; at 47, line 23 through 48, line 2; at 48, line 20 through 49, line 14; at 50, lines 2-18; at 52, lines 4-9; at 59, lines 3-20; at 60, lines 7-12). She did not see tripods in use at this particular project during the times when she was walking around (*id.* at 53, lines 11-15). When shown a photograph that was previously marked as Defendant's Exhibit C, Davis testified that, above an access exhaust vent, she saw a piece of equipment that looked like a tripod—a device for lowering people or equipment into a ventilation shaft and a worker could attach himself or herself to the tripod as a form of fall protection while working in the shaft (*id.* at 50, lines 3-6; at 52, lines 4-9; at 53, lines 5-10).

### Deposition Testimony of Simon Wynn (Senior Counsel at ESD) (NYSCEF Doc. No. 84)

Simon Wynn testified that ESD, also known as the New York State Urban Development Corporation, was the owner of the Moynihan Train Hall Project (Wynn Dep. Tr. at 9, lines 13-21; at 16, lines 4-7). When asked if ESD still currently owns the Moynihan Train Station, Wynn answered, "Yes" (*id.* at 18, lines 20-22). Wynn testified that MSDC, a subsidiary of ESD, was the "eyes and ears" of ESD at the construction project (*id.* at 27, lines 8-18; at 28, lines 3-13). MSDC was responsible for financial matters and providing regular reports on the project to the board of directors of ESD (*id.* at 28, lines 3-13).

At the deposition, Wynn reviewed the Development Agreement between ESD and MTHD and the Design-Build Agreement between MTHD and Skanska Moynihan Train Hall Builders (*id.* at 37, lines 19-24; at 38, lines 13-23; at 47, line 13 through 48, line 10). Wynn confirmed that, pursuant to the Development Agreement, ESD hired MTHD, an entity comprised of Vornado and Related Companies, as the developer or "design builder" responsible for the project (*id.* at 16, lines 24 through 17, line 11; at 21, lines 2-15; at 38, lines 9-23; at 39, lines 8-13). Wynn confirmed that pursuant to the Design-Build Agreement, the developer in turn retained a Skanska entity for construction services (*id.* at 18, lines 7-13; at 21, line 16 through 22, line 2).

### Deposition Testimony of David Bellman (Executive Vice President of Vornado Realty Trust, a member of MTHD) (NYSCEF Doc. No. 87)

David Bellman testified that MTHD is comprised of two members, Vornado Realty Trust and Related Companies (Bellman Dep. Tr. at 13, lines 3-21). At the

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**   **Page 4 of 11**
**Motion No.  002**

[* 4]                                           4 of 11

deposition, Bellman reviewed the Development Agreement between ESD and MTHD and the Design-Build Agreement between MTHD and Skanska Moynihan Train Hall Builders (*id.* at 30, lines 11-17; at 31, lines 6-10; at 36, line 14 through 37, line 6). Bellman confirmed that, pursuant to the Development Agreement, MTHD was a single purpose entity created to oversee the management of the construction project known as Moynihan Train Hall (*id.* at 12, lines 6-15; at 31, lines 3-22). Vornado Realty Trust managed the project on behalf of MTHD (*id.* at 15, lines 2-7). Bellman testified that, in his role as the developer overseeing overall developer operations, he had the authority to stop work if he saw an unsafe work condition at the project and did so on two occasions for improper fall prevention procedures (*id.* at 23, lines 6-8; at 24, lines 2-22). Bellman also confirmed that, pursuant to the Design-Build Agreement, MTHD hired a Skanska entity as the general contractor for the project (*id.* at 16, line 13 through 17, line 3), but "the technical title they had was design builder" (*id.* at 18, lines 4-12; *see also id.* at 36, line 20 through 37, line 6).

### The Sworn Witness Statement (NYSCEF Doc. No. 88)

Jaron Bratton, a Skanska co-worker of plaintiff, provided a sworn witness statement, dated March 21, 2024, in which he stated:

> "1) I witnessed the January 30 2020 accident involving Mario Geloso. He and I were working at the Moynihan Train Hall project for Skanska. . . . He was struck by a tripod fall arrest device, which collapsed over onto him. Mr. Geloso was going down a ladder in a subway ventilation shaft. His body was in the shaft and his head was still above it, at approximately street level. The tripod was a fall arrest device designed to prevent workers from falling down the shaft should they slip, trip or fall from the ladder. . .
>
> 2) . . . The tripod involved in the accident was approximately six (6') to six and a half (6'5) feet in height. It was made of metal (aluminum) and weighed approximately one-hundred and fifty (150 lbs.) to two-hundred (200 lbs.) pounds. We were working the swing shift. The tripod was already in position over the shaft when we went to the shaft. It was not anchored or attached to the ground/surface. I do not know who set it up.
>
> 3) Mr. Geloso's harness was affixed to the cable/extension drop line that is part of the tripod, for fall protection. As he was descending, the tripod failed and did not remain upright. It tipped over and the steeple [the central point at the top of the tripod] struck Mr. Geloso on the head and neck area. The steeple fell a distance of approximately five (5') to five and a half (5.5') feet before it struck Mr. Geloso"

(NYSCEF Doc. No. 88 [Bratton Affirmation] ¶¶ 1-3).

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**
**Motion No.  002**

**Page 5 of 11**

5 of 11

[* 5]

## DISCUSSION

"On a motion for summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc.*, 36 NY3d 69, 73-74 [2020] [internal quotation marks and citation omitted]; *see also* CPLR 3212 [b]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If the moving party meets its burden, the burden shifts to the non-moving party "to establish the existence of material issues of fact which require a trial of the action" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to raise an issue of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Labor Law § 240(1), commonly known as the Scaffold Law, provides as follows:

"All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes on owners or general contractors and their agents a nondelegable duty, and absolute liability for injuries proximately caused by the failure to provide appropriate safety devices to workers who are subject to elevation-related risks" (*Saint v Syracuse Supply Co.*, 25 NY3d 117, 124 [2015]). As a preliminary matter, the court notes that there is no dispute that ESD was the owner of the Moynihan Train Hall Project.[3]   It is also undisputed that MSDC, an ESD subsidiary that was the "eyes

---

[3] "Courts have held that the term 'owner' is not limited to the titleholder of the property where the accident occurred and encompasses a person 'who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for his [or her] benefit'" (*Scaparo v Village of Ilion*, 13 NY3d 864, 866 [2009]).

Here, Wynn testified that ESD was both the owner of the Moynihan Train Hall project and owner of Moynihan Train Station (Wynn Dep. Tr. at 16, lines 4-7; at 18, lines 18-22).  To the extent that ownership of a construction project implies that ESD has a property interest in the premises where the alleged violations of Labor Law § 240 (1), the court notes that defendants did not argue that ESD was not an "owner" for the purposes of Labor Law § 240 (1) in opposition to the motion, which amounts to a concession of its status as "owner" under Labor Law § 240 (1)  (*see Flores v Metro. Transportation Auth.*, 164 AD3d 418, 420 [1st Dept 2018] ["There is no longer an issue as to whether the City or any of the other defendants are proper

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**                    **Page 6 of 11**
**Motion No.  002**

6 of 11

[* 6]

and ears" of ESD, and that MTHD, the developer hired by ESD, were agents of said owner for purposes of Labor Law § 240(1) (*Guryev v Tomchinsky*, 20 NY3d 194, 202 [2012]; *Walls v Turner Const. Co.*, 4 NY3d 861, 864 [2005]). Thus, Labor Law § 240 (1) applies to ESD, MSDC, and MTHD.

To recover under the statute, the plaintiff must demonstrate a violation of the statute, and that such violation was a proximate cause of the injuries sustained (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003] ["liability is contingent on a statutory violation and proximate cause"]). However, "[w]here a plaintiff's actions [are] the sole proximate cause of his injuries, . . . liability under Labor Law § 240(1) [does] not attach" (*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006] [internal quotation marks and citation omitted]).

"In order to prevail on summary judgment in a section 240(1) 'falling object' case, the injured worker must demonstrate the existence of a hazard contemplated under the statute 'and the failure to use, or the inadequacy of a safety device of the kind enumerated therein'" (*Fabrizi v 1095 Ave. of the Ams., L.L.C.*, 22 NY3d 658, 662 [2014] [internal quotation marks and citation omitted]). "Essentially, the plaintiff must demonstrate that at the time the object fell, it was being hoisted or secured or required securing for the purposes of the undertaking" (*id.* [internal quotation marks and citations omitted]). In addition, "[a] plaintiff must show that the object fell . . . *because of* the absence or inadequacy of a safety device of the kind enumerated in the statute" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001] [emphasis in original]).

Plaintiffs argue that the unsecured tripod failed and collapsed, in violation of Labor Law § 240(1), which therefore caused the 80- to 200-pound tripod to fall five to five and a half feet and strike plaintiff (*see* NYSCEF Doc. No. 70 [Plaintiffs' Memorandum of Law] ¶ 14). Plaintiffs argue that the collapse of a safety device, such as the tripod, constitutes a prima facie showing of a violation of Labor Law § 240(1) (*see id.,* ¶ 8). Plaintiffs contend that there are no issues of fact as to whether plaintiff was the sole proximate cause of the accident (*see* NYSCEF Doc. No. 99 [Reply Affirmation of Robert G. Abruzzino, Esq.] ¶¶ 4-5).

In opposition, defendants, relying on plaintiff's deposition testimony, argue that Labor Law § 240(1) does not apply because at the time of the accident, the tripod was not being hoisted or secured and the tripod did not fall from a great height (*see* NYSCEF Doc. No. 96 [Affirmation in Opposition of Merle Schrager, Esq.] ¶¶ 3, 23). Defendants further argue that plaintiff was the sole proximate cause of the accident because plaintiff, by his own admission, failed to inspect the tripod before using it (*id.,* ¶ 24). They contend that there was no issue that the tripod was sufficient because plaintiff did not fall from the ladder, was easily extricated from the ventilation shaft, and later that day resumed working in the same shaft using the same equipment without issue (*id.*).

party defendants under the Labor Law in this case, given defendants' counsel's concession at oral argument"]).

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**
**Motion No. 002**

**Page 7 of 11**

[* 7]

Here, plaintiffs have established prima facie entitlement to summary judgment under section 240(1).

"'Labor Law § 240(1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*'" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 604 [2009], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner*, 13 NY3d at 603). To determine whether a height differential is physically significant, the court must consider "the weight of the object and the amount of force it was capable of generating, even over the course of a relatively short descent" (*id.*, 605; *see also Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 10 [2011]).

Here, plaintiff was exposed to an elevation-related hazard within the meaning of the statute. Plaintiff testified that the metal tripod, to which he was attached by a harness, weighed between 80 and 150 pounds and stood seven to seven and a half feet tall above the ventilation shaft (50-h Hearing Tr., at 50, lines 17-23; at 51, lines 16-18; Plaintiff's Dep. Tr., at 50, lines 2-5; at 51, line 25 through 52, line 9; at 69, lines 9-15). About five feet down the shaft, with his head still outside the shaft, the steeple or top of the tripod struck plaintiff on the head (50-h Hearing Tr., at 47, lines 6-17; at 48, lines 2-6; Plaintiff's Dep. Tr., at 73, lines 8-14).

Contrary to defendants' contention, the elevation differential of five to five and a half feet cannot be viewed as de minimis, given the weight of the tripod and the amount of force that it was capable of generating over its descent (*see Runner*, 13 NY3d at 603; *see also Wilinski*, 18 NY3d 1 at 10 [2011] [finding that given the amount of force that metal pipes were able to generate, a height differential of four feet cannot be described as de minimis]; *Carranza v Mem'l Hosp. for Cancer & Allied Diseases*, 225 AD3d 536, 536 [1st Dept 2024] [finding that plaintiff established a prima facie case under Labor Law § 240(1) where plaintiff showed he was injured by a 150-pound panel that fell four feet on his knee]). The harm to plaintiff "was the direct consequence of the application of the force of gravity to the [tripod]" (*Runner*, 13 NY3d at 604); that is, that "the risk to be guarded against is the unchecked or insufficiently checked descent of the object" (*Torres-Quito LLC v 1711 LLC*, 227 AD3d 113, 116 [1st Dept 2024] [internal quotation marks and citation omitted]).

Second, plaintiff's deposition testimony established that the tripod fell onto his head, neck, shoulders, and back (50-h Hearing Tr., at 48, lines 2-6; Plaintiff's Dep. Tr., at 73, lines 8-14). The tripod, a safety device used to lower workers to prevent their fall, was inadequately secured so as to prevent the tripod itself from falling, thus failing to adequately protect plaintiff (*see Ortega v City of New York*, 95 AD3d 125, 130 [1st Dept 2012] [internal quotation marks and citation omitted] ["Plaintiffs made out a prima facie case" where "a device precisely of the sort enumerated by the statute was not placed

**160166/2020 GELOSO, MARIO vs. PORT AUTHORITY OF NEW**
**Motion No. 002**

**Page 8 of 11**

8 of 11

[* 8]

and operated as to provide adequate protection to plaintiff," because "[device], which should have been secured to the ground, but was not, failed to protect him"]; *see also Ladd v Thor 680 Madison Ave. LLC*, 212 AD3d 107, 112 [1st Dept 2022] [plaintiff was injured when the hatch door of a hoist slammed onto his head as he stood on a ladder with his head protruding above the hatch aperture]; *Gabriel v The Boldt Group, Inc.*, 8 AD3d 1058, 1059 [4th Dept 2004]; [plaintiff was struck by a hoisting apparatus when it collapsed]).

Thus, plaintiffs have demonstrated a violation of the statute and that the violation proximately caused plaintiff's injuries.

Defendants failed to establish the existence of an issue of fact warranting denial of plaintiffs' motion. Contrary to defendants' contention, the fact that the tripod was not being hoisted or secured does exclude this case from the ambit of section 240(1), because the tripod "'required securing for the purposes of the undertaking'" (*Fabrizi*, 22 NY3d 658 at 663 [2014], quoting *Outar v City of New York*, 5 NY3d 731, 732 [2005]; *see also Quattrocchi v F.J. Sciame Const. Corp.*, 11 NY3d 757, 758-59 [2008] ["'falling object' liability under Labor Law § 240(1) is not limited to cases in which the falling object is in the process of being hoisted or secured"]; *Torres-Quito*, 227 AD3d 113, 120 n 2 [1st Dept 2024] [internal citation omitted] ["Plaintiff is not required to show that the object was being hoisted or secured when it fell, since that is not a precondition to liability pursuant to Labor Law § 240(1)"]).

Under the appellate precedent in this judicial department, "secured for the purposes of the undertaking" has been construed to mean that the falling object must be secured in such a way so as to not fall onto construction workers below (*see McVicker v Port Auth. of N.Y. & N.J.*, 195 AD3d 554, 555 [1st Dept 2021] ["no appropriate safeguard, such as a hoisting device, barrier, or exclusion zone, was utilized]; *Rutkowski v New York Convention Ctr. Dev. Corp.*, 146 AD3d 686, 686 [1st Dept 2017] [citation omitted] ["The lighting bar was an object that required securing to prevent it from becoming dislodged or falling during the work"]).

Absent any evidence that the tripod was adequately secured so as to prevent it from falling onto plaintiff during the work, plaintiff met his prima facie burden of establishing a violation of Labor Law § 240(1) (*see Greenwood v Whitney Museum of Am. Art*, 161 AD3d 425, 425-26 [1st Dept 2018] [affirming partial summary judgment on the plaintiff's section 240(1) claim "inasmuch as the record establishes that plaintiff's injury was the proximate result of the failure to take adequate steps to secure the piece of scrap metal from falling from the height at which it was being used"]).

Although defendants argue that the tripod was sufficient, they submitted no evidence that would raise an issue of fact as to whether the tripod was adequately secured at the time of the accident. Plaintiff's testimony that he had no previous problems with the tripod is irrelevant, as a violation of Labor Law § 240(1) does not require proof that defendants had prior notice of a defect in a safety device. Plaintiff's testimony that the tripod functioned without issue later in the day of the accident is

160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW
Motion No.  002

Page 9 of 11

irrelevant, as liability under section 240(1) does not require plaintiff to show that the tripod was defective (*see Cabrera v 65 Park W. Realty, LLC*, 188 AD3d 520, 520 [1st Dept 2020] [citations omitted] ["(Defendants') contention that an issue of fact exists as to whether the ladder was appropriate to perform the work is unavailing. Plaintiff was not required to show [on the Labor Law § 240(1) claim] that the ladder was defective"]). It is also irrelevant that, at the time of the accident, plaintiff did not fall from the ladder on which he was standing, or that he was easily extricated from the ventilation shaft thereafter, which do not controvert plaintiff's account that the tripod fell onto plaintiff because the tripod was inadequately secured.

Defendants' argument that plaintiff Mario Geloso was the sole proximate cause of the accident, because he failed to check that the tripod was secure before using it, is unavailing.

Because plaintiffs have demonstrated a violation of the statute, plaintiff Mario Geloso cannot be solely responsible for his injury under the statute (*see Blake*, 1 NY3d at 290 ["if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it"]; *Cazho v Urban Bldrs. Group, Inc.*, 205 AD3d 411, 412 [1st Dept 2022]). Any failure on plaintiff's part to ensure that that the tripod was properly set up "would, at most, constitute comparative negligence, a defense inapplicable to a Labor Law § 240(1) cause of action" (*Concepcion v 333 Seventh LLC*, 162 AD3d 493, 494 [1st Dept 2018]).

Accordingly, defendants have failed to raise any triable issue of material fact warranting denial of plaintiffs' motion. Thus, plaintiffs are entitled to summary judgment in their favor as to liability under Labor Law § 240(1) as against defendants ESD, MSDC, and MTHD.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment against defendants Empire State Development Corporation A/K/A Empire State Development, Moynihan Station Development Corporation, and Moynihan Train Hall Developer LLC (Seq. No. 002) is **GRANTED**, and plaintiffs are granted summary judgment in their favor as to liability for violation of Labor Law § 240(1) against defendants Empire State Development Corporation A/K/A Empire State Development, Moynihan Station Development Corporation, and Moynihan Train Hall Developer LLC.

This constitutes the decision and order of the court.

20250219183152RTSAI67178E78EB2F4B2AA9775EE0878A7848

**2/19/2025**
**DATE**                                                                 **RICHARD TSAI, J.S.C.**

CHECK ONE:          ☐ CASE DISPOSED          ☒ NON-FINAL DISPOSITION

**160166/2020   GELOSO, MARIO vs. PORT AUTHORITY OF NEW**                    **Page 10 of 11**
**Motion No.  002**